UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YARISSA SUAREZ,

         Plaintiff,

   - against -

SCF CEDAR, LLC, et al.,

         Defendants.

REPORT AND
RECOMMENDATION

13-CV-7420 (ALC)(RLE)

To the HONORABLE ANDREW L. CARTER, JR.:

## I. INTRODUCTION

Plaintiff Yarissa Suarez commenced this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. (Doc. No. 1.) Upon learning that the case had been settled, the Honorable Andrew L. Carter, Jr. discontinued the case without prejudice on June 13, 2014. (Doc. No. 6.) On May 15, 2015, Plaintiff Yarissa Suarez ("Suarez") moved to enforce the Parties' settlement term sheet ("the term sheet"), and asked the Court to enter judgment against Defendants. (Doc. No. 22.) On June 4, 2015, the Court terminated counsel of Defendant Joseph Nieves ("Nieves"), and Nieves proceeded *pro se* and in his individual capacity. On June 18, 2015, Judge Carter referred the dispute to the undersigned.

The Court held a conference on October 19, 2015. Nieves argued that the Parties entered into a non-binding, tentative agreement that was to be formalized within thirty days. Nieves further argued that he disagreed with a number of terms, and that a formal settlement agreement was never sent by Suarez. Suarez contended that although the term sheet mentioned the formal agreement, it was nevertheless binding. The Court ordered Nieves to submit a letter from former counsel regarding his understanding of the binding nature of the term sheet. Upon receipt of

counsel's letter (Doc. No. 29), the Court ordered Plaintiff's counsel to show cause by November 17, 2015, in the form of an affidavit, why the term sheet should be enforced. (Doc. No. 31.)

Having reviewed the Parties' submissions and the term sheet, I recommend that Plaintiff's motion to enforce the settlement term sheet be **GRANTED**, and that **JUDGMENT BE ENTERED** against Nieves in the amount of **$22,500.**

## II.   DISCUSSION

### A.   Applicable Law

A district court may enforce, on motion, a settlement agreement reached in a case that was pending before it. *Palmer v. County of Nassau*, 977 F. Supp. 2d 161, 166 (E.D.N.Y. 2013) (quoting *Comm'n Express Nat'l, Inc. v. Rikhy*, 03-CV-4050 (CPS), 2006 WL 385323, at *2 (E.D.N.Y. Feb. 17, 2006) (internal citations omitted))). "Settlement agreements to end litigation are strongly favored by courts and are not lightly to be cast aside." *Id.* (citing *Willgerodt, on Behalf of Majority Peoples' Fund for 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997)). As settlement agreements are contracts, once reached they are binding and enforceable. *Little v. Greyhound Lines, Inc.*, 04-CV-6735 (RCC), 2005 WL 2429437, at *1 (S.D.N.Y. Sept. 30, 2005).

General principles of contract law must govern the interpretation of a settlement agreement. *Goldman v. C.I.R.*, 39 F.3d 402, 405 (2d Cir. 1994). "To determine whether a settlement was agreed to, the Court looks first to the plain language of the agreement." *Id.* (citing *Kohl Indus., Park Co. v. County of Rockland*, 710 F.2d 895, 903 (2d Cir. 1983) (internal quotations omitted)). For a contract to be valid under New York law there must be an offer, acceptance, consideration, mutual assent, and an intent to be bound. *Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC*, 04-CV-1621 (KMW)(AJP), 2005 WL 1377853, at *4

(S.D.N.Y. June 9, 2005) (quoting *Register.Com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (collecting cases)). When the terms of a contract are clear, the subjective intent of the Parties is irrelevant. *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997), *accord In re Johns-Manville Corp.*, 759 F.3d 206, 216 (2d Cir. 2014).

"A preliminary agreement is binding, despite the desire for a later formal document, 'when the [P]arties have reached complete agreement (including the agreement to be bound) on all issues perceived to require negotiation. Such an agreement is preliminary only in form – only in the sense that the Parties desire a more elaborate formalization of the agreement. The second stage is not necessary; it is merely considered desirable.'" *Hostcentric Technologies, Inc.*, 2005 WL 1377853, at *5 (quoting *Teachers Ins. & Annuity Assoc. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987), *accord Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. 269, 293 (S.D.N.Y. 1995); *Weinrech v. Sandhaus*, 850 F. Supp. 1169, 1176-77 (S.D.N.Y. 1994)). The Second Circuit has established two principles regarding the binding nature of a preliminary agreement: (1) "if the [P]arties intend not to be bound until the signing of a formal document embodying their agreement, they will not be bound until then; and (2) the mere fact that the [P]arties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event." *V'Soke v. Barwick*, 404 F.2d 495, 499 (2d Cir. 1968), *see also Acot v. New York Medical College*, 99 Fed. App'x 317, 318 (2d Cir. 2004).

**B.    The Term Sheet is Binding**

In this case, the grounds for enforcing the term sheet are clearly established. The term sheet does not state that it is an interim and non-binding agreement. (Doc. No. 31-1.) It does, however, list the amount of payment, and the non-monetary terms such as confidentiality, non-

3

disparagement, no admission of liability, and a general release. (*Id.* ¶¶ 1-5.) Moreover, the term sheet calls for payment of $5,000 within "90 days of the date of *this agreement* . . ." (*Id.* ¶ 8.) The Court notes that the term sheet contains a provision which states, "The attorneys are to provide a more formalized agreement of the above terms." (*Id.* ¶ 6.) Consistent with that provision, and contrary to Nieves's assertions, Plaintiff's counsel sent a proposed formalized agreement on June 17, 2014, at the request of Nieves's counsel. (Doc. No. 31-2 at 1.) Plaintiff then sent an email to confirm Nieves's receipt of the formal agreement on June 19, 2014. (*Id.*) Plaintiff did not hear from Nieves, and sent another email to his counsel on June 24, 2014, stating that she had "left a few phone messages with [his] office, and [had] not received a response." She also attempted to discuss the terms of the agreement and schedule the first payment. (*Id.* at 2.) On June 30, 2014, Nieves's counsel responded that he did not see the formal agreement attached, but asked Plaintiff's counsel to send it again, and that he would forward it to Nieves upon receipt. (*Id.*) That same day, Plaintiff's counsel reattached the formal agreement and emailed it to Nieves's counsel, who then forwarded it to Nieves. (*Id.* at 3.)

Suarez followed up on July 3, 2014, and again on July 11, 2014, after payment became due and had not been received. (*Id.*) By July 13, 2014, Nieves still had not responded to the proposed agreement, or sent payment. Instead, through counsel, Nieves asserted that "the settlement was subject to a 'formalized' agmt [sic] that [y]ou had been working on since we last met at mediation." (*Id.* at 4.)

Nieves's representation that the term sheet was a non-binding agreement is inconsistent with the record. Nieves ignores the fact that the formal agreement had been emailed twice, and that Suarez had inquired on multiple occasions to discuss the payment obligations under the agreement. On July 24, 2014, and again on September 11, 2014, Nieves informed Suarez

4

through counsel that he could not afford payment, notably because he "had more substantial financial obligations, including the pending landlord-tenant dispute." (Doc. No. 31 ¶¶ 22, 26.) Instead of sending payment, on September 30, 2014, Nieves argued that the term sheet should not be enforced because "Plaintiff did not provide a formalized agreement 'for months after execution of the Settlement Term Sheet' and 'Defendants did not agree with the language/terms and as such [Defendants] did not execute the formal agreement.'" (*Id.* ¶ 28) (quoting Doc. No. 13.)

Nieves cannot avoid his obligations under the term sheet contract by failing to cooperate in the drafting of a formal agreement. Although the Parties contemplated executing a formal agreement, the objective evidence indicates that the Parties intended to be bound by the term sheet because it was a complete agreement on material terms. The term sheet contained monetary and non-monetary terms of the settlement agreement, and fully contemplated a timeframe and a plan for payment. The Parties even anticipated a stipulation of dismissal once payment had been remitted in full. If Nieves defaulted on any payments, the balance owed was to be "accelerated and [D]efendant agree[d] that judgment [could] be entered." (Doc. No. 31-1.) The term sheet was therefore "preliminary only in form" and the Parties merely desired a more elaborate, formal agreement. *See Hostcentric Technologies, Inc.*, 2005 WL 1377853, at *5; *see also V'Soke*, 404 F.2d at 499.

The Court finds that the term sheet is binding, and enforceable against Nieves. Because Nieves has failed to make payments under the agreement, I recommend that judgment be entered against him for the amount agreed upon by the Parties, or $22,500.

### III.     CONCLUSION

For the foregoing reasons, I recommend that Plaintiff's motion to enforce the settlement term sheet be **GRANTED**, and that **JUDGMENT BE ENTERED** in the amount of **$22,500.**

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Andrew L. Carter, Jr., 500 Pearl Street, Room 435, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

Dated: March 14, 2016
New York, New York

The Honorable Ronald L. Ellis
United States Magistrate Judge